## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELLE ROCHE,** *Individually and as Class Representative*, | **Case No. 22–cv–00607–ESK–EAP** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **AETNA INC.,** *et al.*, | |
| **Defendants.** | |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on a motion to dismiss (Motion) (ECF No. 66) the amended complaint (Complaint) (ECF No. 64 (Compl.)) by defendants Aetna Inc., Aetna Health Inc. (a N.J. corporation), Aetna Health Insurance Company, Aetna Life Insurance Company (collectively, Aetna), and The Rawlings Company LLC (Rawlings). Defendants filed a brief (ECF No. 67 (Def's Br.)) and a declaration with exhibits (ECF No. 68) in support of the Motion. Plaintiff Michelle Roche, individually and as class representative, filed opposition (ECF No. 71 (Opp'n Br.)) to the Motion. Defendants filed a reply brief to plaintiff's opposition (ECF No. 72 (Reply Br.)).

For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL BACKGROUND[1]

On January 19, 2007, Roche was in a car accident where she sustained injuries for which she received medical treatment. (Compl. ¶ 36.) Plaintiff

---

[1] The Court incorporates by reference the background section of Judge Hillman's opinion (ECF No. 27) on defendants' first motion to dismiss.

sought and received medical benefits through her "School Employees Health Benefit Program" (SEHBP) health insurance policy of $86,601.72. (Compl. ¶ 37.) The SEHBP policy is issued and administered by Aetna. (*Id.*) Plaintiff also filed a lawsuit for damages against the other driver in the car accident. (Compl. ¶ 38.)

Defendant Rawlings specializes in healthcare subrogation services. (Compl. ¶ 12.) Rawlings, acting as an agent for Aetna, asserted a lien, subrogation claim, and/or demand for reimbursement for the benefits Aetna paid plaintiff under the SEHBP. (Compl. ¶ 39.) Plaintiff, in response, made a payment to defendants of $86,601.72, for which she now seeks redress. (Compl. ¶ 41.)

In May 2023, District Judge Hillman (ret.) stayed this case pending an appeal before the New Jersey Superior Court, Appellate Division [2] and administratively terminated defendants' first motion to dismiss. (ECF No. 27.) In April 2024, the parties sought, and the Court granted, a lift of the stay, and the case was reassigned to me. (ECF Nos. 29, 30, 31.) After limited discovery, defendants filed a renewed motion to dismiss in January 2025 (ECF No. 59). Roche amended her complaint in response. (ECF No. 64.) Defendants filed the Motion in March 2025.

Plaintiff asserts the following claims against Aetna: violation of N.J.S.A. § 2A:15-97 and N.J.A.C. § 11:4-42.10 (count I); breach of contract (count II); breach of the duty of good faith and fair dealing (count III); violation of the New Jersey Consumer Fraud Act (CFA) (count IV); violation of fiduciary duty as set out in the Restatement (Second) of Torts (Restatement) § 874 (count V);

---

[2] The appeal, in part, involved the timeliness of plaintiff's appeal of the final determination by the New Jersey School Employees' Health Benefit Commission. Judge Hillman concluded that "the issues before the state court are directly related to the claims before this court." (ECF No. 27 p. 16.)

"directing or permitting conduct of another" as set out in the Restatement §877 (count VI); bad faith (Count VII); "acting in concert" as set out in the Restatement §876 (count VIII); intentional misrepresentation (count IX); conversion (count X); theft by deception in violation of N.J.S.A. §2C:20-4 (count XI); and unjust enrichment (count XII).

Plaintiff asserts the following claims against Rawlings: violation of N.J.S.A. §2A:15-97 and N.J.A.C. §11:4-42.10 (count XIII); "acting in concert" as set out in the Restatement §876 (count XIV); unjust enrichment (count XV); intentional misrepresentation (count XVI); conversion (count XVII); and theft by deception in violation of N.J.S.A. §2C:20-4 (count XVIII).

Plaintiff also asserts putative class claims on behalf of "other similarly situated individuals" against Aetna for: breach of contract (count XX); breach of the duty of good faith and fair dealing (count XXI); intentional misrepresentation (count XXII); conversion (count XXIII); violation of the CFA (count XXIV); violation of fiduciary duty as set out in the Restatement §874 (count XXV); "directing or permitting conduct of another" as set out in the Restatement §877 (count XXVI); bad faith (count XXVII); theft by deception in violation of N.J.S.A. §2C:20-4 (count XXVIII); and unjust enrichment (count XXIX). Plaintiff asserts the putative class claims against Rawlings for: violation of N.J.S.A. §2A:15-97 and N.J.A.C. §11:4-42.10 (count XIX); and "acting in concert" as set out in the Restatement §876 (count XXX).

## II.   STANDARD

### A.   <u>Motion to Dismiss</u>

When considering a motion to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure (Rule) 12(b)(6), courts must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. *Makky v. Chertoff*, 489 F. Supp. 2d 421, 429 (D.N.J. 2007). A motion to dismiss may be granted only if the plaintiff

has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the sufficiency of a complaint, a court must take three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

## B.     Motion to Drop Parties

"On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "District courts have broad discretion in deciding whether to sever a party pursuant to Rule 21." *Turner Const. Co. v. Brian Trematore Plumbing & Heating, Inc.*, 07–666, 2009 WL 3233533, at *3 (D.N.J. Oct. 5, 2009) (internal quotations omitted).

## III.  DISCUSSION

### A.     Plaintiff's Claims Are Not Barred by the Statute of Limitations.

To dismiss a claim at the pleadings stage because it is barred by a statute of limitations, the time bar must be clear on the face of the complaint. *See*

*Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).   A statute of limitations defense is required to be pleaded as an affirmative defense in the answer however, defendant may raise a limitations defense by motion under Rule 12(b)(6) only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."   *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir.1975)).

Courts in this district will not dismiss cases based on a statute of limitations unless a "plaintiff effectively [pleads herself] out of court by alleging facts that [are] sufficient to establish the defense."   *See Schmidt*, 770 F.3d at 252 (internal quotations omitted) (citing *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir 2006)); *compare, e.g.*, *Doe v. Hosbach*, 24–4756, 2025 WL 2444239, at *3 (D.N.J. Aug. 25, 2025) (refusing to assume a plaintiff's birthday because it is not the plaintiff's burden to anticipate and refute affirmative defenses), *with Barker v. United Airlines, Inc.*, 23–3065, 2024 WL 378633, at *5 (D.N.J. Feb. 1, 2024) (finding claim time-barred when an email integral to plaintiff's claims conclusively showed date of accrual outside the statute of limitations).

Here, the parties agree that plaintiff's claims are subject to a six-year statute of limitations.   (Def's Br. p.33; Opp'n Br. p.36 n.3.)   However, they disagree on when the six-year period accrued.   Defendants argue that "the statutes … accrue[d] on September 30, 2010, when Roche received an adverse benefit determination through Rawlings'[s] initial assertion of the [SEHBP's] reimbursement rights."   (Def's Br. p.33.)   Roche asserts that the statute of limitations could not have accrued "until there was a recovery and then only once Roche was harmed by the January 2013 payment to Aetna."   (Opp'n Br. p.35.)

Defendants' statute of limitations argument is premature.   Defendants cite to paragraph 39 of the Complaint, but that paragraph does not contain any

facts about dates.[3]  (Reply Br. p.17.)  There is nothing on the face of the complaint where plaintiff pleads herself out of this case.  *See Schmidt*, 770 F.3d at 252.

Although I need not reach the question of when the statute of limitations began to accrue, plaintiff appears to have the law on her side.   In general, the statute of limitations can only accrue once plaintiff has suffered a harm.   *See Russo Farms, Inc. v. Vineland Bd. of Educ.*, 675 A.2d 1077, 1084 (N.J. 1996) (finding a negligence claim accrues once plaintiff has suffered a "consequential damage or loss").

Aetna points to no case law supporting its position that the plaintiff's claims accrued when Aetna, through Rawlings, asserted its alleged right to subrogation.   "The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises."   *See Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 231 (3d Cir. 2003).   And, here, Roche could not have sued for the return of her payment in September 2010 because she had not yet made the payment and, thus, not suffered harm.   Accordingly, defendants' motion to dismiss the Complaint as untimely filed is DENIED.

### B.    Plaintiff's Claims Are Not Barred by the Voluntary Payment Doctrine.

The voluntary payment doctrine provides that "where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not [enforceable] against him, he cannot recover it back." *Simonson v. Hertz Corp.*, 10–1585, 2011 WL 1205584, at *3 (D.N.J. Mar. 28, 2011) (quoting *In re N.J. State Bd. of Dentistry*, 423 A.2d 640, 643 (N.J. 1980)).

---

[3] Paragraph 39 states: "Rawlings … asserted a lien, subrogation claim and/or demand for reimbursement for the benefits which Aetna paid under its non-ERISA 'School Employees Health Benefit Program' as against [p]laintiff's personal injury recovery."  (Compl. ¶39.)

"Since the [voluntary payment doctrine] is equitable in nature, factual as well as legal disputes are for the Court, and not the jury, to decide." *Boyko v. Am. Int'l Grp., Inc.*, 08–2214, 2012 WL 1495372, at *13 (D.N.J. Apr. 26, 2012) (internal quotations omitted), *order vacated in part on reconsideration*, 2012 WL 2132390 (D.N.J. June 12, 2012); *see also Roche v. Aetna, Inc.*, 167 F. Supp. 3d 700, 712 (D.N.J. 2016).

At the motion to dismiss stage, analysis of the voluntary payment doctrine—just as with the statute of limitations—depends on the face of the complaint. "This Court has previously determined that application of the voluntary payment rule cannot be resolved on a motion to dismiss, where the complaint does not establish whether the plaintiff's payment was truly voluntary and made without mistake of fact." *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 395 (D.N.J. 2009) (citing *Carducci v. Aetna U.S. Healthcare*, 247 F. Supp. 2d 596, 619 (D.N.J. 2003), *overturned on other grounds by Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005)).

Here, rather than relying on the Complaint, Aetna argues that Roche's January 2013 payment was "unquestionably voluntary" based solely on records of pre-payment correspondence between the parties that were filed in a prior related case.  (Reply Br. p.20 (citing ECF No. 11–1, *Roche v. Aetna, Inc.*, 165 F. Supp. 3d 180 (D.N.J. 2016), *aff'd* 681 F. App'x 117 (3d. Cir. 2017)).  At this stage, I can only consider the Complaint, which does not establish whether Roche's $86,601.72 payment in January 2013 "was truly voluntary and made without mistake of fact."  (Compl. ¶41 (stating the payment was made "in response to the Defendants' lien, subrogation and/or repayment demands for the money paid by the [SEHBP] health policy")); *see Rickenbach*, 635 F. Supp. 2d at 395.  Nothing in the Complaint suggests that Roche knew that

the subrogation demand was not enforceable. [4]     Accordingly, defendants'
motion to dismiss the Complaint under the voluntary payment doctrine is
DENIED.

### C.     All Defendants Are Proper at This Stage.

Defendants argue that the only proper Aetna-defendant is Aetna Life
Insurance Company, who administered the SEHBP, and that the Court should
dismiss the other Aetna defendants—Aetna Inc., Aetna Health, Inc. (a NJ
Corp.), and Aetna Health Insurance Company. (Def's Br. p.46.) Roche
counters that defendants "are attempting to obtain dismissal of three of the
Aetna entities before Roche is permitted to obtain discovery," by using
information beyond the Complaint and that Roche should be allowed discovery
"to determine the precise involvement of all of the Aetna defendants with the
injury[-]causing conduct."   (Opp'n Br. pp.49, 50.)

I agree with Roche.   The Complaint asserts allegations against all four
Aetna defendants.   (Compl. ¶¶20 (alleging "Aetna" did not end subrogation
activity), 42, 43 (making allegations against "All Defendants").)   Moreover, the
case cited by defendants wherein Aetna Inc. was dismissed was a dismissal at
summary judgment, not on a pre-answer motion to dismiss.   (Def's Br. p.47
(citing *Lutz Surgical Partners PLLC v. Aetna, Inc.*, 15–2595, 2021 WL 2549343,
at *4 (D.N.J. June 21, 2021), *vacated on other grounds*, 2023 WL 2472403
(D.N.J. Feb. 8, 2023)).)

Defendants may ultimately prevail in having the other Aetna-defendants
dismissed from this case.   At this stage of the litigation, however, the
Complaint sufficiently alleges claims against all Aetna-defendants.   I suggest
the parties confer to resolve which Aetna-defendants are proper parties.

---

[4] Indeed, in several paragraphs, plaintiff alleges that defendants were aware
that their demand for payment was unlawful.   (*See e.g.*, ECF No. 64 ¶¶1, 25, 42, 81,
86.)

Absent a stipulation between the parties agreeing to dismiss certain Aetna-defendants because they were not involved in the issuance and administrative of the SEHBP, the resolution of this issue will likely require summary judgment practice.

Accordingly, I will not dismiss any defendants at this time. *See In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 432 (D.N.J. 2015) ("The specific role of each defendant will be elucidated through discovery to which [p]laintiffs are entitled because the allegations in the Amended Complaint are sufficient to provide notice under Rule 8."); *see also Strike 3 Holdings, LLC v. Doe*, 18–12585, 2020 WL 3567282, at *6 (D.N.J. June 30, 2020) ("[D]etermining whether the defendant named in an action is in fact the defendant against whom liability will ultimately stand necessarily implicates an analysis of material outside the four-corners of the complaint, and considering whether the pled defendant is the wrong defendant at the pleading stage is inappropriate.").

### D.    N.J.S.A §2A:15-97 and N.J.A.C. §11:4-42.10 Applies to Plaintiff's Claims.

The central question—as evidenced by the proportion of the parties' briefing devoted to it—is whether the New Jersey Collateral Source Statute (Statute), N.J.S.A. §2A:15-97, and the Anti-Subrogation Regulation (Regulation), N.J.A.C. §11:4-42.10, restrict Aetna's subrogation right for benefits paid to an insured for injuries suffered in a car accident in Pennsylvania and who recovered a settlement against the tortfeasor from a Pennsylvania lawsuit.   I find that both the Statute and the Regulation apply to prohibit Aetna's subrogation claim.

The Statute "require[s] a plaintiff who receives benefits from *any* source other than a joint tortfeasor to deduct that amount from [their] recovery in *any*

civil action.    Thus, payments made by health care providers are deducted from a plaintiff's tort recovery under New Jersey law."    *Levine*, 402 F.3d at 164.[5]

The Regulation[6] was promulgated in response to the New Jersey Supreme Court's opinion in *Perreira v. Rediger*, 778 A.2d 429 (N.J. 2001).    There, the Court held that the then-existing Department of Insurance regulation [7] conflicted with the Statute and was invalid.    *See Levine*, 402 F.3d at 160.

Defendants argue that the Statute should not apply here because it is a procedural—not substantive—rule that should not apply extraterritorially to Roche's lawsuit in Pennsylvania.    (Def's Br. pp.28, 29; Reply Br. pp.2, 3.) Defendants rely on *Levine*, in which the Third Circuit labeled the Statute a "general law of civil procedure," 402 F.3d at 165, and argue that New Jersey civil procedure rules do not apply to actions before Pennsylvania courts.

---

[5] N.J.S.A. §2A:15-97 states:

> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c. 70 (C. 39:6A-1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

[6] The Regulation provides, in relevant part: "No policy or certificate providing group health insurance shall limit or exclude health benefits as the result of the covered person's sustaining a loss attributable to the actions of a third party." N.J.A.C. §11:4-42.10.

[7] The then-existing regulation permitted health insurance policies to include reimbursement and subrogation claims.    N.J.A.C. §11:4-42.10 (1993) (repealed August 5, 2002).

(Reply Br. p.3); *see also Mattson v. Aetna Life Ins. Co.*, 124 F. Supp. 3d 381, 390 n.1 (D.N.J. 2015) (citing *Levine*, 402 F.3d at 165) ("[T]he [Statute] is clearly a procedural statute.").

Roche counters that the Statute applies to the SEHBP because it is an insurance contract made in New Jersey with a resident of New Jersey, which uses a handbook with a New Jersey choice-of-law provision.   (*See* Opp'n Br. p.20; Compl. ¶44 (quoting the 2009 and 2010 Aetna Member Handbooks: "State law and the New Jersey Administrative Code govern the SHBP and SEHBP. If there are discrepancies between the information presented in this handbook, and the law, regulation, or contract, the latter will govern" (emphasis omitted)). Further, Roche asserts that the Statute "is not merely a procedural rule, as it determines substantive rights relating to damages a party can recover." (Opp'n Br. p.15.)

I agree with Roche.   The statement from *Levine,* that the Statute is a "general law of civil procedure," is *dicta*.   In *Levine*, the Third Circuit addressed whether ERISA preempted the Statute.   *See* 402 F.3d at 164.   The insurance plans had paid a portion of the insureds' medical bills.   *Id.* at 160. The insurance plans, thereafter, sought reimbursement from a portion of the insureds' tort settlements.   *Id.*   The Court determined that the Statute did not apply to ERISA governed plans because it was not "specifically directed toward the insurance industry" but could apply to parties other than insurance entities and cases outside the insurance industry.   *Id.* at 166.   In this context, the Court's statement that the Statute "is a general law of civil procedure" is in recognition that the Statute governs *all* civil cases, not "merely those involving insurance entities."   *Id.* at 165.   It was not a determination that the Statute only governs civil case procedure.   And, even if the Statute is "merely" procedural, a procedural rule can still have substantive applications to health insurance policies.   *Cf. De Vito v. Liquid Holdings Grp., Inc.*, 15–6969, 2018

WL 6891832, at *24 (D.N.J. Dec. 31, 2018) (noting in the context of federal court procedures that "almost any procedural rule will exert *some* effect on substantive rights").

That Roche's car accident and subsequent state-court litigation took place in Pennsylvania is immaterial. The New Jersey Legislature, in enacting the Statute, sought to do away with the common law collateral source doctrine by requiring a plaintiff's tort recovery to be reduced by any other benefits received. And the Regulation affirmatively prevents New Jersey health insurers from seeking subrogation against their insureds. In short, New Jersey has a strong interest in enforcing its statutes when the matter involves a New Jersey resident, who is employed in New Jersey and insured by a New Jersey health insurer that utilizes a handbook with a New Jersey choice-of-law provision.

Likewise, it is of no moment that SEHBP is not a traditional private health insurance company. This matter is materially indistinguishable from *County of Bergen Employee Benefit Plan v. Horizon Blue Cross Blue Shield of New Jersey*, which held that the Statute applied to a self-insured municipality because it "draws no distinction between a publicly-funded payment source and a private, for-profit health insurer." 988 A.2d 1230, 1237 (N.J. Super. Ct. App. Div. 2010). Defendants point out (Reply Br. p.10 n.7) that *County of Bergen* involved a tort case in New Jersey, but as discussed above, the out-of-state accident and litigation is a distinction without a difference.

### E.    Substantive Claims

Roche has asserted the same individual claims on behalf of a putative class. At the pre-certification stage, I find no need to analyze the class-claims differently. *See Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004) (dismissing class claim where individual claims had been dismissed pre-certification).

1.      **Violation of N.J.S.A. §2A:15-97 and
N.J.A.C. §11:4-42.10 as to Aetna and
Rawlings (Counts I, XIII, XIX)**

Neither party argues that the Statute or the Regulation provide an explicit private cause of action, so the question is whether the Statute or Regulation confer an implied private cause of action.   They do not.

"As a general principle, a plaintiff cannot bring claims to enforce a statute if it does not have a private right of action."   *Zanetich v. Wal-Mart Stores E., Inc.*, 22–05387, 2023 WL 3644813, at *4 (D.N.J. May 25, 2023), *aff'd*, 123 F.4th 128 (3d Cir. 2024).   "Both the United States Supreme Court and [the New Jersey Supreme] Court have held that a statute that does not expressly create a private cause of action may, nonetheless, implicitly create one."   *Jarrell v. Kaul*, 123 A.3d 1022, 1029 (N.J. 2015) (citations omitted).   However, "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action."   *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001).   Failure to include an express private right of action constitutes "reliable evidence that the Legislature neither intended to create such a cause of action ... nor desired the judiciary to create one by implication."   *Miller v. Zoby*, 595 A.2d 1104, 1108 (N.J. Super. Ct. App. Div. 1991).

The New Jersey Supreme Court has adopted a set of factors originally conceived by the United States Supreme Court to determine if a statute confers an implied private right of action.

> (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy.

*In re State Comm'n of Investigation*, 527 A.2d 851, 853–54 (N.J. 1987) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). "Although courts give varying weight to each one of those factors, the primary goal has almost invariably been a search for the underlying legislative intent." *R.J. Gaydos Ins. Agency, Inc.*, 773 A.2d at 1143 (internal quotations omitted).

The first factor asks whether the Legislature enacted the statute to benefit a special class and whether plaintiff is a member of the class. Roche argues that "violation of the statute and regulation generate a civil remedy because they were enacted to protect Roche[,] and affording a private cause of action is consistent with the purpose of the legislative scheme." (Opp'n Br. p.37.) Roche does not explain what special class the Legislature had in mind when it enacted the Statute or how she fits in that class. For their part, instead of analyzing the three factors, defendants only state in a conclusory fashion that "no private right of action exists under *either* [the Statute] or [the Regulation] so they cannot form a basis for independent causes of action or a derivative basis for [Roche's] other claims." (Def's Br. p.36.)

As stated above, the Statute requires plaintiffs who receive benefits from sources other than a joint tortfeasor to deduct that amount from their recovery in any civil action. *Levine*, 402 F.3d at 164. The New Jersey Supreme Court in *Perreira v. Rediger* determined that the intended beneficiaries of the Statute were liability carriers. *See* 778 A.2d 429, 436 (N.J. 2001) ("The Legislature had two choices: to benefit health insurers by allowing repayment of costs expended on a tort plaintiff, or to benefit liability carriers by reducing the tort judgment by the amount of health care benefits received. As the legislative history reveals, the choice was made to favor liability carriers.") Roche does not state in what way the Legislature intended to benefit insureds through the Statute. This factor favors finding no implied private cause of action.

The second factor asks whether there is any evidence that the Legislature intended to create a private right of action under the statute. "This Court's analysis is guided by federal courts' reluctance to interpret a state statute to create a private right of action where a private right of action is not expressly stated in the statute." *Zanetich*, 2023 WL 3644813, at *5. Further, Courts should be hesitant to find a private cause of action against an entity subject to significant regulation from a State agency. *See id.* (citing cases). This includes the insurance industry. *See R.J. Gaydos Ins. Agency, Inc.*, 773 A.2d at 1148–49 (concluding no private right of action against insurers, who are heavily regulated by state agencies).

The Statute's goal was to eliminate double recovery for plaintiffs in tort actions, and to do that, the Legislature had to decide whether to benefit liability insurance carriers or health insurers. "As the legislative history reveals, the choice was made to favor liability carriers." *Perreira*, 778 A.2d at 436; *see* Legislative History Checklist, N.J.S.A. 2A:15-97, New Jersey State Library, *available at* https://repo.njstatelib.org/server/api/core/bitstreams/99edd81f-3d8b-4ce7-b674-88038e177d63/contentv (last visited Nov. 21, 2025) (compiling statements of purpose about the Statute including, *inter alia* "This bill is intended to prohibit duplicate recovery by plaintiffs"). There is no evidence in the legislative history showing that the Legislature intended to use the Statute to create a private right of action. This factor favors finding no implied private right of action.

The last factor asks whether it is consistent with the underlying purposes of the legislative scheme to infer the existence of a private cause of action. Despite Roche's claims that creation of a civil remedy is consistent with the scheme of the Statute and the Regulation, it does not appear to be the case. As with the second factor, the purpose of the Statute does not demand a private right of action on behalf of insured parties, and that conclusion does not change

when considering the entire legislative scheme.    Accordingly, the third factor also supports not finding an implied private right of action.

The Statute and the Regulation do not create a private right of action, and as a result, defendants' Motion is GRANTED as to Counts I, XIII, and XIX.

### 2.    Breach of Contract as to Aetna (Counts II, XX)

The elements of a breach of contract claim are that the parties entered into a contract containing certain terms, the plaintiff performed as required while the defendant did not, and the defendant's breach caused a loss for the plaintiff. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021).    Here, accepting as true the allegations in the Complaint, Roche has plausibly pled a breach of contract claim against Aetna.    Roche states that defendants breached "the insurance policy contract Aetna entered into with [p]laintiff" by asserting liens, subrogation claims, and/or repayment demands as against Roche's personal injury recovery. (Compl. ¶¶ 85, 86.)    Roche alleges she suffered $86,601.72 in damages from her payment to Aetna. (*Id.* ¶ 87.)    Although Aetna denies having a contract with Roche, (Def's Br. p. 39), at this stage, the Court accepts all well-pleaded facts in the Complaint as true. Accordingly, defendants' motion to dismiss Counts II and XX is DENIED.

### 3.    Breach of Duty of Good Faith and Fair Dealing; Bad Faith; Breach of Fiduciary Duty, Restatement §874 as to Aetna (Counts III, V, VII, XXI, XXV, XXVII)

"[E]very insurance contract contains an implied covenant of good faith and fair dealing."    *Price v. N.J. Mfrs. Ins. Co.*, 867 A.2d 1181, 1185 (N.J. 2005).    To assert a breach of the covenant under New Jersey law, a plaintiff must allege that: "(1) the defendant act[ed] in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties,

even if that benefit was not an express provision of the contract." *Veyhl v. State Farm Fire & Cas. Co.*, 21–10112, 2021 WL 6062304, at *2 (D.N.J. Dec. 22, 2021) (citing *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J. 2020)).   With insurance contracts, a claim for breach of the implied covenant of good faith and fair dealing is "tantamount" to a claim for "bad faith."   *Id.* (citing *Laing v. Am. Strategic Ins. Corp.*, 14–1103, 2014 WL 4953250, at *2 (D.N.J. Oct. 1, 2014)).

Likewise, in the insurance context, courts analyze claims for breach of fiduciary duty under the same umbrella of "bad faith."   In general, "[a]n insurer only owes a fiduciary duty to an insured under 'certain circumstances,' such as when it is settling claims on behalf of the insured."   *DeGennaro v. Am. Bankers Ins. Co. of Fla.*, 737 F. App'x 631, 639 (3d Cir. 2018).   "New Jersey federal and state courts have consistently held that a fiduciary duty 'does not necessarily exist in a first-party [insurance] situation.'   Rather, a claim for breach of fiduciary duty in the first-party insurance context is tantamount to a claim for breach of the implied covenant of good faith and fair dealing."   *Veyhl*, 2021 WL 6062304, at *3; *see also, e.g.*, *Robeson Indus. Corp. v. Hartford Acc. & Indem. Co.*, 178 F.3d 160, 168 n.10 (3d Cir. 1999) (reviewing separate claims for "breach of fiduciary duty" and "breach of covenant of good faith and fair dealing" as a single "bad faith" claim).

"To establish "bad faith," the plaintiff must demonstrate the absence of a reasonable basis for denying benefits of the policy. If the plaintiff demonstrates the absence of a reasonable basis, he must then prove that the defendant knew or recklessly disregarded the lack of a reasonable basis for denying the claim."   *Veyhl*, 2021 WL 6062304, at *2 (internal quotations and citations omitted).

Here, Roche has done enough to suggest that Aetna lacked a reasonable basis to assert subrogation.   Roche alleges that Aetna asserted liens and

demanded subrogation despite knowing that such action was precluded by New Jersey state law.    (Compl. ¶¶ 111, 112, 113.)    Accordingly, defendants' Motion is DENIED as to Counts III, V, VII, XXI, XXV, and XXVII.

### 4.    Violation of the CFA, N.J.S.A. §56:8-19 (Counts IV, XXIV)

The CFA addresses "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (citing *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978)).    To state a CFA claim. a plaintiff "must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Id.*    The CFA is remedial legislation "which should be construed liberally." *Id.*

Here, the parties disagree about whether Roche suffered an ascertainable loss.    Aetna argues that a denial of insurance benefits is not an ascertainable loss.    (Def's Br. p. 39 (citing cases)).    However, Aetna mischaracterizes Roche's allegations.    Roche does not allege Aetna's unlawful conduct was denying her benefits.    Rather, Roche argues that Aetna violated the CFA with Aetna's "inclusion of lien, subrogation and/or reimbursement requirements."    (Compl. ¶ 96; *see also* Opp'n Br. p. 44 (clarifying that "Roche's claims do not concern merely the denial of benefits").)

Aetna further relies on *Mattson*, 124 F. Supp. 3d at 392, to argue that CFA claims based on the Statute should be denied.    (Def's Br. pp. 39–40.) However, the plaintiffs in *Mattson* failed to establish an ascertainable loss because they had not suffered in any discernable way.    *See* 124 F. Supp. 3d at 392 (characterizing the alleged harm as "illusory").    Conversely here, Roche

paid over $86,000 based on Aetna's alleged unlawful conduct.    (Compl. ¶ 41.) Accordingly, defendants' Motion is DENIED as to Counts IV and XXIV.

### 5.    Directing or Permitting Conduct of Another, Restatement §877 (Counts VI, XXVI)

Section 877(a) of the Restatement states: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he orders or induces the conduct, if he knows or should know of circumstances that would make the conduct tortious if it were his own."

Here, plaintiff alleges that Aetna knew or should have known that New Jersey prohibited liens, subrogation claims, and reimbursement demands by health insurers and, with that knowledge, "retained, hired, authorized, induced and allowed Rawlings to assert" such demands on Aetna's behalf.    (Compl. ¶¶ 106, 107.)    However, plaintiff has not alleged any facts showing *how* Aetna ordered or induced Rawlings to act, only that Rawlings acted as Aetna's agent. A simple recitation of the elements is not sufficient.    Accordingly, defendants' Motion is GRANTED as to Counts VI and XXVI, and Counts VI and XXVI are DISMISSED.

### 6.    Acting in Concert, Restatement §876 (Counts VIII, XIV, XXX)

"The New Jersey Supreme Court has interpreted 'aid' and 'abet' consistently with the Restatement … [§] 876(b))." *Guarneri v. Buckeye Pipe Line Servs. Co.*, 205 F. Supp. 3d 606, 618 (D.N.J. 2016) (citing *Tarr v. Ciasulli*, 853 A.2d 921 (N.J. 2004)).    Under that standard, a party is liable as an aider or abettor if a plaintiff can show that "(1) the party whom the defendant aids perform[s] a wrongful act that causes an injury; (2) the defendant [is] generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; [and] (3) the defendant knowingly and substantially assist[s] the principal violation." *Id.* (citing *Tarr*, 853 A.2d at 929).

Here, the complaint fails to show *how* either Aetna assisted Rawlings (Count VIII) or Rawlings assisted Aetna (Counts XIV, XXX) in committing a tortious act.  Further, the allegations are conclusory and formulaic.  (*See* Compl. ¶ 122 ("In asserting liens, subrogation demands and/or demands for repayment as against [p]laintiff's personal injury recovery, Aetna acted in concert with, and pursuant to a common design with, Rawlings.").) Accordingly, defendants' Motion is GRANTED with respect to Counts VIII, XIV, and XXX, and these counts are DISMISSED.

### 7.    Intentional Misrepresentation (Counts IX, XVI, XXII)

"In order to state a claim for intentional misrepresentation under New Jersey law, a plaintiff must allege: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by [d]efendant of its falsity; (3) an intention that the plaintiff rely upon the fact; (4) the plaintiff's reasonable reliance upon it; and (5) resulting damages."  *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

Here, Roche alleges that Aetna "represented to [her] that it was entitled to a lien, subrogation and/or reimbursement from [p]laintiff[']s personal injury recovery," that Aetna should have known New Jersey law precluded such entitlement, and that Roche relied to her detriment on Aetna's representations in sending the payment. (Compl. ¶¶ 126–129).  Having stated all the elements with specificity and alleged facts to plausibly support the elements, these claims will survive.  As a result, defendants' Motion is DENIED as to Counts IX, VXI, and XXII.

### 8.    Conversion (Counts X, XVII, XXIII)

"[C]onversion is the intentional exercise of dominion and control over chattel that seriously interferes with the right of another to control that

chattel." *Meisels v. Fox Rothschild LLP*, 222 A.3d 649, 661 (N.J. 2020). Black's Law Dictionary defines "Chattel" as "[m]ovable or transferable property," especially "a physical object capable of manual delivery." *Chattel*, Black's Law Dictionary (11th ed. 2019). Money qualifies as chattel for the purposes of a conversion claim, but only if "a particular pot of money was taken or wrongfully diverted to the defendant's own use." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d. 363, 380 (D.N.J. 2021). In short, the money must be identifiable, like a wire transfer. *Id.*

Here, the parties disagree as to whether Roche had a property interest in her tort recovery. (Def's Br. p. 44; Opp'n Br. p. 46, 47.) Such disagreement, however, is more appropriate for summary judgment. Roche alleges that she had a right to immediately possess the compensation she received for her injuries and that Aetna interfered with that right. (Compl. ¶¶ 132, 133, 134.) This is enough to survive a motion to dismiss. As a result, defendants' Motion is DENIED as to Counts X, XVII, and XXIII.

### 9. Theft by Deception, N.J.S.A. §2C:20-4 (Counts XI, XVIII, XXVIII)

"Theft by deception, under N.J.S.A. 2C:20-4, provides '[a] person is guilty of theft if he [1] purposely obtains [2] property of another [3] by deception.'" *State v. Geddes*, A–2350–20, 2023 WL 3994328, at *3 (N.J. Super. Ct. App. Div. June 12, 2023); *see also State v. Diorio*, 83 A.3d 831, 843 (N.J. 2014) ("A person cannot be convicted of theft by deception unless he has obtained the property of another by purposely creating a false impression."). As can be surmised by the inclusion of "theft," in the title of the claim, and from this statute's listing in the New Jersey Code of Criminal Justice, "theft by deception" is a *criminal* offense prosecuted by the state, and it does not create a private civil cause of action enforced by the public. Accordingly, defendants' Motion is GRANTED as to

Counts XI, XVIII, and XXVIII.   Counts XI, XVIII, and XXVIII will be DISMISSED.

### 10.   Unjust Enrichment (Counts XII, XV, XXIX)

Under New Jersey law, to state a claim for unjust enrichment "a plaintiff must show both that [the] defendant received a benefit and that retention of that benefit without payment would be unjust."     *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994).   Unjust enrichment is a quasi-contract theory of recovery, so when there is an express contract, there is no basis for imposing quasi-contract relief.   *See Garcia v. Prudential Life Ins. Co. of Am.*, 08–5756, 2009 WL 5206016, at *13 (D.N.J. Dec. 29, 2009).

Here, Roche claims that both Aetna and Rawlings benefited at Roche's expense "[a]s a result of the wrongful collection of monies by [d]efendants." (Compl. ¶¶141–144; 160–162.)   Defendants only argue that no contract exists between Roche and either Aetna or Rawlings.   (Def's Br. p.39.)   This ignores that an unjust enrichment claim can only exist when there is no contract between the parties.   As such, defendants' motion is DENIED as to Counts XII, XV, and XXIX.   However, I note that these counts will fall away if there was an express contract.   Further, Roche alleges only that she "made payment to *[d]efendants* in the amount of $86,601.72," (Compl. ¶41 (emphasis added)) without specifying which defendant received the payment.   Upon determining the payee—Aetna or Rawlings—the unjust enrichment claim of as to the non-payee will likely fall away.

## IV.  CONCLUSION

Defendants' Motion is GRANTED as to the following counts, which are hereby DISMISSED: Counts I, VI, VIII, XI, XIII, XIV, XVIII, XIX, XXVI, XXVIII, and XXX.   The Motion is DENIED in all other respects.   An appropriate order will accompany this opinion.

_/s/ Edward S. Kiel_
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Date: November 24, 2025